IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| MARY ANNETTE ABERNATHY, ET AL. § | |
| VS. § | CIVIL ACTION NO. _____ |
| BECON CONSTRUCTION COMPANY, INC.§ | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs (see List of Plaintiffs, attached as Exhibit "A"), complaining of and against BECON CONSTRUCTION COMPANY, INC., Defendant, for causes of action and, Subject to Plaintiffs' rights to arbitration, files this Original Complaint against Becon Construction Company, Inc. alleging as follows:

I. JURISDICTION

1.1    This is an action under the Fair Labor Standards Act of 1938, as amended, 29 USC 201 *et seq.* (hereinafter "the FLSA"). Jurisdiction of this action is conferred on the Court under Section 16(b) of the FLSA (29 USC 216(b)), by the provisions of 28 USC 1337, and by 28 USC 1331.

II. VENUE

2.1    Venue is proper pursuant to 28 U.S.C. § 1391(b), as the Eastern District of Texas is the judicial district in which a substantial part of the events giving rise to the claims occurred.

2.2    At all relevant times during Plaintiffs' employment on the project in question ("Motiva Crude Oil Expansion Project") Plaintiffs and Defendant Becon Construction Company, Inc. were parties to an agreement embodied in Defendant's mandatory Dispute Resolution Program, which required mandatory arbitration of workplace disputes such as the disputes made the subject of this lawsuit.  On or about November 7, 2013, following completion of the Motiva Crude Oil Expansion Project, Defendant issued a notice to its former employees who worked on said Project, among whom included Plaintiffs, which advised said employees that Becon was eliminating the Dispute Resolution Program.  *See* Exhibit B – Notice of Plaintiff Johnny Walters.  In filing this action, Plaintiffs are preserving their rights to seek the relief requested below, and despite the attached Notice, Plaintiffs are expressly reserving their rights to seek individual arbitrations of their respective claims made the subject of this lawsuit.  To that end, Plaintiffs have sought a declaratory judgment and order for specific performance in state court permitting Plaintiffs to proceed with arbitration of their claims in a matter that is currently pending before Jefferson County Court at Law No. 1, styled *Joe Arabie v. Becon Construction, Inc.,* Cause No. 125,150, and will be filing a request that this Court stay this matter pending outcome of that issue.

### III.  PARTIES

3.1    Plaintiffs appear in this action on behalf of themselves.

3.2    Defendant, BECON CONSTRUCTION COMPANY, INC., is a domestic corporation doing business in the state of Texas. The Defendant may be served with


process by serving its registered agent in the state of Texas: **C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.**

## IV.  FACTUAL ALLEGATIONS

4.1   During various time periods, Plaintiffs (also referred to as "the Employees") performed work at the Motiva Port Arthur, Texas SBU2 Crude Expansion Project (hereinafter referred to as "the Motiva job") outside of the predetermined pay period.  Each day, Plaintiffs were required by Defendant to report for work at a certain location by a certain time, whereupon Plaintiffs were required to badge in and get on a bus and be transported to the Motiva facility.  At the time Plaintiffs boarded the bus, they had retrieved, carried and donned items of personal protective equipment ("PPE") required by Defendant as a condition of employment, and were ready to perform the tasks of their job – including attending any meetings, retrieving any tools they did not already have with them, and beginning their craft.  Defendant did not provide Plaintiffs a secure place to store their PPE; therefore, Plaintiffs were required to carry the required PPE to and from the jobsite and store the PPE at their homes.

4.2   Upon reaching the Motiva Refinery, Plaintiffs continued fulfilling the terms and conditions of their employment by badging/clocking in at the Motiva Refinery, donned in the prescribed PPE as required by Defendant, and ready to immediately begin fulfilling the tasks of their job – including attending meetings, retrieving tools, discussing the tasks of their job for the particular day, beginning

the tasks associated with their particular craft, and undertaking any other tasks necessary to accomplish the tasks the of their job.

    4.3    Up through and after the time of badging/clocking in at the Motiva Refinery, Plaintiffs had been, (a) under the control of their employer, (b) were subject to the rules of the work site-- which included but was not limited to being subjected to searches of their lunch boxes and being subject to the rules of discipline – and, (c) were actually fulfilling the terms and conditions of their employment implemented by Defendant in being at the Motiva Refinery long before the start of the pay period, which was 7:00am.  At the time Plaintiffs badged/clocked in the Motiva Refinery they were reporting for work as required by Defendant, and continued to engage in activities in satisfaction of the terms and conditions of their job, among which included walking, signing in, retrieving tools, checking PPE, obtaining new PPE to the extent existing PPE had become damaged or worn out, and making necessary preparations to begin performing their craft – all prior to 7:00am.  Many times, after requiring Plaintiffs to be at the Motiva Refinery long before the pay period started, Defendant would require Plaintiffs to wait until 7:00am to begin walking to their particular job site within the Motiva Refinery. During any such periods of waiting, Plaintiffs had been engaged to wait, which benefited Defendant by reducing any delays between the performance of Plaintiffs' job tasks, among other benefits.   The time Plaintiffs expended engaged in these pre-pay period activities and/or wait time was performed on a daily basis and was not compensated, regardless of whether Plaintiffs worked a full 40 hour workweek.

4.4 At all of the above described times, Plaintiffs were required to have PPE donned at particular times and particular locations – by no later than badging/clocking in at the remote parking lot and later at the Motiva Refinery – long before7:00am.  Similarly, Plaintiffs were required to carry any tools Plaintiffs brought from home. (Again, Defendant did not provide Plaintiffs a secure storage for tools or PPE).  Additionally, at all of the above described times, Plaintiffs were subject to all rules of the work site and were physically on the work site.

4. 5 From the time Plaintiffs reported to work, donned in the required PPE and ready to begin to work, until the time the pay period actually started, was different for each Employee depending on what time the Employee reported to the remote parking lot and boarded the bus.  In the mornings, Defendant's buses departed the remote lots at staggered times with the first bus arriving at the Motiva Refinery long before the pay period started and the last bus departing the Motiva Refinery long after the pay period ended.  A review of the Gate Logs would identify the times Plaintiffs badged in at the parking lot and/or the refinery, donned in the required PPE, and ready to begin the tasks of their job – all as required by Defendant.

4.6 The above described time was expended prior to the start of the pay period and was time that Defendant required Plaintiffs to be prepared and ready to start the job tasks for the day, and was of great benefit to Defendant, with little or no benefit to Plaintiffs.  To the extent Plaintiffs were required to wait, Plaintiffs waited for the benefit of Defendant, at the direction and under the control of

Defendant, and which time Defendant considered Plaintiffs to be in the course and scope of their employment.

    4.7    Plaintiffs were paid compensable time for a certain pre-determined time period each day (*i.e.* 7:00 a.m. - 5:30 p.m. Monday thru Thursday and 7:00a.m. – 3:30 p.m. Friday). That said, as described above, Plaintiffs were frequently required to undertake compensable activities prior to or after the pre-determined "pay period" each day including, but not limited to:

    a.    The Employees were required to retrieve, carry and put on PPE and gear (including but not limited to work gloves, goggles, safety glasses, Fire Retardant Clothing, protective footwear, ear protection, and the like) at home or at the parking lot, and then to take it off and store it away at their homes every night.

    b.    The Employees were required before work time to attend mandatory safety meetings which would commence before the time recorded as the beginning of their compensable time.

    c.    The Employees who were assigned radio equipment would have to go to offices or other areas to retrieve said equipment in the morning; and would have to return said equipment after the end of hours that they were compensated for, and/or take them home and charge them up at night.

    d.    The Employees who were assigned "Nextel" or similar communication devices and were required to take them home were frequently contacted by other employees before and after the pay period, to discuss work issues including but not limited to the tasks and challenges for the upcoming day.

e.  In the mornings, the Employees would be required to attend foremens' (tool box) safety meetings; would be required to attend or participate in Job Safety Analysis (JSA) or similar pre-work safety reports or discussions; would be called upon to fill out, review, or complete "STARRT" cards or other similar safety paperwork; would be required to engage in exercise or calisthenics in order to "warm up" for the day's work; and/or would be required to attend "tool box meetings" or be "lined out" in their daily job duties, all prior to the commencement of the designated pay period.

f.  The Employees would be required to retrieve and carry tools, either from their homes or from areas on the job site.  To the extent Defendants required Plaintiffs to provide their own tools, Defendants did not provide Plaintiffs a secure storage facility at the jobsite to store tools – or PPE – such that storing tools or PPE at the jobsite posed an unreasonable risk of having their tools and/or PPE stolen. That said, Plaintiffs were required to pay for lost or stolen tools or PPE.

g.  Defendant did not provide Plaintiffs a place to donn and doff PPE. That said, Defendant required Plaintiffs to have prescribed PPE donned at the time Plaintiffs reported to the parking lots and boarded the bus and at the time Plaintiffs badged/clocked in the Motiva Refinery Gate.  Plaintiffs were required to keep the PPE donned until Plaintiffs badged/clocked out of the Motiva Refinery Gate at the end of the day, which was oftentimes after the end of the pay period, 5:30pm. Moreover, the parking lots were considered part of the work site.  That said, Plaintiffs were required to store PPE at their home and carry it with them each day

and don said PPE at the time Plaintiffs badged in the remote parking lot and boarded the bus. At the end of the day, and after the end of the pay period, Plaintiffs were required to walk and wait in lines to badge out of the Motiva Refinery – still donned in PPE-- followed by walking and waiting in lines to badge out at the remote parking lot work site. Unlike the staggered bus departures in the morning, buses were arriving simultaneously at the remote parking lot work site, in the evening, which resulted in substantial lines to badge out at the remote parking lot. Following the end of the pay period, 5:30pm, and as a result of implementation of the busing procedure, it was not unusual for Plaintiffs to be stuck badging out at the remote parking lot until after 6:00pm.

h. In addition to the compensable work activities Plaintiffs engaged in prior to and after the pay period, Plaintiffs were also required by Defendant to use up to one half or more of their 30 minute lunch period walking to and from the designated lunch area.

4.8 During the above stated times, Plaintiffs were unable to effectively use their time for their own purposes and were performing work activities required by, and for the benefit of Defendant and were considered by Defendant to be in the course and scope of employment with Defendant. Plaintiffs were under the control of their employer, were required to be donned in PPE, and the time in question and actions taken or required of them predominantly benefitted their employer and were principal activities of their job, and were integral and indispensable to other principal activities of their job. As such, regardless of whether Plaintiffs were

required to engage in pre-pay period or post-pay period actual activities or pre-pay period or post-pay period wait time, Plaintiffs' "work day" actually began and ended at points outside of the pre-determined "work time/pay period" for which Plaintiffs received compensation.  The only element of the employer-employee relationship that was lacking was payroll; otherwise, Plaintiffs were in the course and scope of their employment, subject to being searched by Defendant, instructed and controlled by Defendant, disciplined by Defendant and terminated by Defendant.

## V.   PLAINTIFFS' INDIVIDUAL CLAIMS

### A.   VIOLATIONS OF THE FLSA

5.1   Defendant refused to pay Plaintiffs for the entire "work day."  By way of example, Defendant refused to pay Plaintiffs for the time Plaintiffs expended with all of the work related activities described above in Paragraph 4.1 thru 4.8.

5.2   The facts set forth above and evidence will demonstrate that Defendant has negligently and/or willfully failed to pay Plaintiffs for time spent in employment, as more fully set forth above, in violation of the FLSA.

5.3   Defendant negligently and willfully and/or with reckless disregard for its obligations under the FLSA, failed to record Plaintiffs' compensable work day, overtime, and maintain records of hours worked in violation of the FLSA.  That is, Defendant ignored the times Plaintiffs badged/clocked in the Motiva Refinery and reported to and/or badged in at the remote parking lot in determining Plaintiffs' work day and calculating Plaintiffs' payroll.  Rather, Defendants used some other arbitrary method which did not accurately record the start and completion of

Plaintiffs' continuous work day and workweek. Defendants' conduct violated 29 C.F.R. 516.2 (a) (5) – (10); 516.8.

5.4    Defendants were aware of their obligations under the FLSA to compensate Plaintiff's for all time that exceeded the 40 hour workweek. However, Defendants knowing disregarded this obligation. As such, Plaintiff's should be able to recover for the prior 3 year period for all overtime wages owed.

5.5    Plaintiffs are entitled to damages representing wages not properly paid, as well as an additional equal amount as liquidated damages resulting from Defendant's violations of the FLSA committed willfully and/or in reckless disregard for the requirements and Plaintiffs' rights under the FLSA. 29 USC 207, 216(b), 255(a). Plaintiffs are further entitled to recover their attorneys' fees, expert fees, pre-judgment and post-judgment interest on all damages, and their costs of court.

    B.    <u>QUANTUM MERUIT and UNJUST ENRICHMENT for GAP TIME/STRAIGHT TIME</u>

6.1    Plaintiffs reallege and incorporate by reference the above paragraphs as if they were set forth again herein.

6.2    Defendant is liable to Plaintiffs under the doctrine of quantum meruit and unjust enrichment. That is, to the extent Plaintiffs pre-pay period and post-pay period activities and/or engaged to wait time occurred during a work week that did not exceed 40 hours, Plaintiffs seek to recover for unpaid straight time, also known as gap time, that the FLSA would not otherwise cover.

6.3    These Plaintiffs provided a benefit to Defendant by providing services to or on behalf of Defendant, including --- following Defendant's instructions to

report to the work site prior to the pay period and stay at the worksite after the pay period during which times Plaintiffs were subjected to the hazards and risks of injury associated with the worksite and during which times Plaintiffs were required to be ready to perform their craft, donned in required PPE, performing work related tasks, attending meetings, reviewing and preparing work related paperwork, observing and reporting safety hazards, replacing damaged PPE, maintaining the safety of the worksite, and following all rules of the worksite at the direction and subject to the discipline of their employer.  Defendants' managers and supervisors were aware of the pre-pay period and post-pay period activities.  Defendant did not compensate Plaintiffs for said work time via payroll of any kind.

6.4    Defendant accepted the benefit of the above services, but failed to pay for the services and thus was unjustly enriched. It is unfair, unjust and inequitable for Defendant to retain the benefits of those services without compensation.

6.5    Hours that were worked but uncompensated include the time when these Plaintiffs worked "off-the-clock" as alleged above.

6.6    The reasonable amount charged for the services would be determined according to the hourly rate, multiplied by the hours worked and not paid, for those weeks when these Plaintiffs worked less than forty (40) hours per week.

## VI.
## VIOLATIONS AND DAMAGES

7.1    Defendant negligently or willfully failed to pay Plaintiffs for time spent in employment, as more fully set forth above, in violation of the FLSA.

7.2	Defendant negligently or willfully failed to maintain adequate records of hours worked, in violation of the FLSA.

7.3	Plaintiffs are entitled to damages representing overtime wages not properly paid, as well as an additional equal amount as liquidated damages resulting from Defendant's willful violation of the FLSA.  29 USC 207, 216(b), 255(a). Plaintiffs are further entitled to recover their attorneys' fees, expert fees, pre-judgment and post-judgment interest on all damages, and their costs of court.

7.4.	Plaintiffs are entitled to recover damages representing straight time and/or gap time wages for unpaid wages during weeks that were less than 40 hours.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For all damages, actual, special, and incidental, that are recoverable under law as the evidence may show proper, including wages, and the value of Plaintiffs' services to Defendant;

2. Additional damages as penalties for Defendant's willful violations of the FLSA;

3. For attorney's fees in an amount deemed sufficient to cover the prosecution of this action;

4. For all costs of these proceedings and interest from date of judicial demand; and,

5. For such other and further relief, in law or in equity, as to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

REAUD, MORGAN & QUINN, L.L.P.
801 Laurel Street
P. O. Box 26005
Beaumont, Texas 77720-6005
(409) 838-1000
Fax (409) 833-8236

*/s/ John Werner*

John Werner
State Bar No. 00789720
Attorneys for Plaintiffs

*/s/ Mark Frasher*

Mark Frasher
State Bar No. 00798187
801 Laurel Street
P. O. Box 26005
Beaumont, Texas 77720-6005
(409) 838-1000
Fax (409) 833-8236
Attorneys for Plaintiffs